First case for this morning is Carter v. City of Alton, Illinois, Appeal No. 18-2636. Mr. Baldwin, counsel for the appellant, is appearing by speakerphone. Can you hear me, Mr. Baldwin? Yes, Your Honor. All right, go ahead. It pleases the court, and Your Honors, and opposing counsel, Philip Baldwin on behalf of the plaintiff, Pearl Carter. Your Honors, this appeal stems from two cases that were filed in the Southern District of Illinois on August 23, 2017, which were ultimately consolidated. The first case, 3-17-CV-896, involved Aaron Crowder, a middle-aged man from Alton, Illinois, who on August 23, 2016, was mistaken by the Alton, Illinois, Police Department for a man wanted by the State of Illinois. When the police effectuated his arrest, a fight ensued. During this arrest, Mr. Crowder was mauled by a police canine. Mr. Crowder was ultimately charged and convicted of disarming a police officer and aggravated battery to a police officer. An appeal was entered in his criminal case on April 23, 2018. The second case, 3-17-CV-897, involves the mother of Aaron Crowder, a Mrs. Pearl Carter. Pearl was born in 1939. At the time of the incident, she was 77 years old. Pearl was charged with aggravated battery and injuring a police canine in connection with that event. And what is the current status of the criminal charges against her? Your Honor, these cases are, those charges are still pending in Madison County. They've been continued approximately 19 or 20 times at this point. It has its next criminal court setting on April 15th of this year. And per my conversation with her counsel, he is still intending to continue this case until he receives a reasonable offer from the State to settle. Was it her lawyer who asked to move the March 18th trial date? I'm sorry, Judge, would you repeat that? Sure, Mr. Baldwin. Was it your client's lawyer who asked to move the March 18th, 2019 trial date? It was. It was, Your Honor. Could we get to the specific civil procedural problem that brings you here? Yes, Judge. It was actually this delay to Ms. Carter's criminal prosecution that led to a May 2nd, 2018 conference call hosted by Magistrate Judge Stephen Williams. You've relied on that conference call in connection with your briefing in this case. Is there anything in the record regarding that conference call? Unfortunately, Judge, there is not. Was it transcript ever? Was it recorded and was a transcript ever described? Transcribed. It was not recorded. I made inquiry to the clerks. The call is not recorded. There is no transcript available. All we have are references to it in the record by us and opposing counsel. Mr. Baldwin, could I ask you a question? As I understand it, we're here because you believe the case should not have been dismissed with prejudice after you moved to dismiss without specifying. Did anybody bring to the district judge's attention our case of Marlowe against Winston and Strawn, which says when somebody proposes to voluntarily dismiss and the court proposes to make the conditions more stringent, the court has to give the plaintiff a chance to back out? No, Your Honor, not to my knowledge. And how does the timing of the events in the district court in this case square with the local rules of the Southern District of Illinois? As I understand it, District Judge Gilbert said basically that you had missed your opportunity to respond to the defendant's motion or the defendant's position taken on May 7th when the court dismissed your case with prejudice just seven days later. Isn't it true that the local rules ordinarily provide 30 days to respond to a motion to dismiss? Well, that was our understanding, and that's part of my argument today, Your Honor. We filed our motion to voluntarily dismiss the complaint on May 4th, 2018. As we previously mentioned, during that period of time, this office, which is just a two-man law firm, was involved in a three-week first-degree murder trial down in another portion of the state. Essentially, we were remote to our current location about two hours south of where we normally practice, staying down there working on the murder case. I actually did not receive the copy of the defense counsel's response to the plaintiff's motion until after I received notice from my secretary that we had left out the words, without prejudice, from our filing. I subsequently filed that, and then just a few days later, we received the rejection of our motion, or actually the granting of our motion to dismiss, but with prejudice, on the 14th, Your Honor. You were put on notice after that that the defendants, or right before that, that the defendants were seeking dismissal with prejudice. Did you ever have the opportunity to respond to that? I would like to say no, but the honest answer is yes. I could have tried to recess myself from the murder trial and respond, Judge. Did the local rules require you to do that that quickly? We don't believe it did, Your Honor, but in answering the other justices' question, I could have. It was a mistake on my part not to do that, based upon the results. Had the district court given you a deadline to do that? No, we weren't provided with a deadline, I mean, not in any official notice, Your Honor. But your answer to Judge Hamilton was that local rules would have given you 30 days? That was our understanding. 7.1C. All right. Do you want to save the rest of your time for rebuttal? I will, Your Honor, thank you. Mr. Pierce? Good morning. May it please the court, my name is Chuck Pierce. I have the privilege of representing all the defendants in this appeal. We're asking that the court affirm the dismissal of the case with prejudice. The court has heard the background of this case. Judge Gilbert properly exercised his discretion in granting the dismissal with prejudice under Rule 41. Well, Counsel, Judge Hamilton is right that Marlowe says that the district judge, before dismissing with prejudice, was supposed to give her an opportunity to withdraw her motion to dismiss rather than accept that term or condition. That is correct. Judge Gilbert did not do that, and he should have. But the result in this case, by his failing to do that, is prejudice to the defendants, not prejudice to the plaintiffs. And here's the very practical reason why. A dismissal without prejudice gives the plaintiff an opportunity within a limited period of time to refile the case. And as you've heard in this case, the plaintiff has continued her criminal trial 20 times now on her own motion. If this court is to overturn the district court judge, essentially that would restart this clock running on the statute of limitations and leave this case and allow the plaintiff to unilaterally extend the statute of limitations and leave this case hanging over the defendants' heads, which is prejudice to the defendants. What if she had elected not to withdraw her motion? Excuse me? What if she had elected not to withdraw her motion? If she had been given the opportunity, she elected not to withdraw it, and he said, fine, you're going to proceed to trial then. I'm not going to dismiss it without prejudice. Would you be prejudiced then? Well, then we wouldn't have been prejudiced. Then we would have proceeded with dispositive motions as was granted in the companion case, and likely this case would have been done by now as opposed to having a theoretical possibility of a case being refiled a year from now. Why shouldn't she have been given that opportunity? She should have been. So why shouldn't we just vacate the dismissal, send you back to the Southern District of Illinois, and go ahead and file your motion for summary judgment? Well, the judge, again, if you vacate the dismissal, then it would be, I would argue that it should be dismissed without prejudice if that was the plaintiff's intention. It's a procedural nightmare, I understand. Well, it's a fixable procedural nightmare, but with the delay caused by the appeal, by the failure to comply, apparently with both the timing, can you help us out with the timing on the local rules? Did we miss something there? No, I would have to go back and check the exact dates, Your Honor. I believe it's 30 days to respond to a motion to dismiss, which it was their motion, so I would have had 30 days. I believe the reply date is 14 days, but I'd have to double-check that. It is, but it might also be reasonable to interpret your response as an independent motion to dismiss with prejudice. Either way, the very, very prompt action on this may have been, in essence, a little too efficient, which is something we try to, well, it's ironic, but it's a problem. Counsel, if we vacate and send it back, why is it necessarily the case that what happens is that it gets dismissed without prejudice? Because it seems like what should have happened here is the district judge should have said, listen, if I dismiss, it's going to be with prejudice, you have a chance to withdraw your motion and keep the case going. So when it goes back down, is it possible then she gets to say, no, I want to keep the case going, I withdraw my motion? Well, I guess that could occur, Your Honor, but I had assumed based on plaintiff's position in the trial court and in the appellate court that they just want this case off the docket while this criminal case proceeds. Neither you nor the district judge has to agree to that. That's true. I understand defendants want to get this resolved in a definitive way, the way you apparently did with Mr. Crowder's case. But I'm not sure this is the best way to get to that result, at least the route that we've followed so far. Did you ever move to dismiss with prejudice for failure to prosecute? You raised some issues in your briefing with respect to the plaintiff's assertion of the fifth and not following up on depositions. No, we did not, Your Honor. That dovetails with Justice Hamilton's question about- We're judges. Judge Hamilton's statement about whether my response to the motion to dismiss could be construed as a motion to dismiss of its own. We don't believe so. It was a reply to the motion to dismiss. There were several conference calls with Magistrate Judge Williams regarding the discovery issues, and again, those are reflected in the docket. There's no transcription of those. There's no full minute record other than just the summary that's stated in the docket. So we believe that the record is clear. There are some errors which may have been made, but the errors were the fault of the plaintiff, as he submitted. Mr. Baldwin says he had the opportunity to do this properly. He didn't, and the prejudice- He may have confessed a little too much there, given the timing here. And he had the opportunity to correct this with his motion to reconsider, which was properly before Judge Gilbert as well. Right, but Judge Gilbert said you needed to have responded substantively much, much sooner, way before the local rules require, and all without complying with the Marlowe process. That's true. Anything else that you want to tell us? Nothing further, Your Honor. I would like to take this opportunity to congratulate Mr. Baldwin on the birth of his grandchild today. Congratulations. We all share in that, Mr. Baldwin. And with that, I would just ask that this court affirm. Thank you. Thank you very much. Mr. Baldwin, I'm sure everyone in the courtroom offers their congratulations, and we understand your appearance by telephone. Is there anything else that you'd like to say in rebuttal? Judges, actually I think I would conclude my argument at this time and sacrifice the remaining two minutes. I would thank the court for your congratulations and notify the court that my daughter successfully provided me with my first grandson. All right. Those are more smiles than we usually see in this courtroom. So thank you to both counsel. The case is taken under advisement.